**Caremoli USA, Inc.**

8603 Derrington Rd
Houston, TX 77064

| Phone # | (515)-233-1255 |
|---------|----------------|
| Fax #   | (515)-233-2933 |

**EXHIBIT 7
TO
COMPLAINT**

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 12/7/2015 | 6201H-Rev2 |

| Vendor |
|--------|
| Shrieve Chemical Products<br>PO BOX 671667<br>Dallas, TX 75267-1667 |

| Ship To |
|---------|
| Caremoli USA, Inc<br>8603 Derrington Road<br>Houston, TX 77064 |

| Terms | Requested Delivery Date |
|-------|-------------------------|
|       | 12/7/2015 |

| Item | Description | Qty | Rate | U/M | Amount |
|------|-------------|-----|------|-----|--------|
| H_GSP_003_D | Grade B Haryana Splits-1000kg totes<br><br>Payment schedule as follows:<br>100 MT/month starting February 2016 | 300 | 1,832.37241 | MT | 549,714.00 |

| | | | | **Total** | $549,714.00 |



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 12/30/2015 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 12/30/2015 |
|---|---|
| INVOICE NUMBER | 4100037 |
| OUR ORDER NO. | 144727 |
| YOUR ORDER NO. | 6201H-Rev2 |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 144727<br>Ship Date    12/30/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

*Page 1 of 1* | Customer Original | **INVOICE TOTAL** | **$183,237.24**

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1.      **APPLICATION**:  These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.      **TERMS OF PAYMENT**:  Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of  (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.      **PERFORMANCE ASSURANCE**:  In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4.      **INSPECTIONS**:  Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery.  Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5.      **WARRANTY/LIMITATION**:  As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance.  EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6.      **DEFAULT/REMEDIES**:  Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement  between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing.  If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7.      **FORCE MAJEURE**:  Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller.  Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event.  For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days.  Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8.      **INDEMNITY**:  To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees.  Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9.      **COMPLIANCE**:  Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.).  Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10.      **GOVERNING LAW**:  The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11.      **AMENDMENT; SEVERABILITY**:  Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing.  In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.      **CONFIDENTIALITY**:  Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

Invoice



# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 12/30/2015 |
|---|---|
| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |

| INVOICE DATE | 12/30/2015 |
|---|---|
| INVOICE NUMBER | 4100038 |
| OUR ORDER NO. | 144727 |
| YOUR ORDER NO. | 6201H-Rev2 |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days
　　　Due Date March 1, 2016

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split　　P/U: 144727<br>　　　　　　Ship Date　12/30/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| | | | |
|---|---|---|---|
| *Page 1 of 1* | Customer Original | **INVOICE TOTAL** | **$183,237.24** |

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1.     **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.     **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.     **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4.     **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5.     **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6.     **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7.     **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8.     **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9.     **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10.     **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11.     **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.     **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 12/30/2015 |
|---|---|
| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |

| | |
|---|---|
| INVOICE DATE | 12/30/2015 |
| INVOICE NUMBER | 4100039 |
| OUR ORDER NO. | 144727 |
| YOUR ORDER NO. | 6201H-Rev2 |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days
Due Date April 1, 2016

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 144727<br>Ship Date    12/30/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| | | | |
|---|---|---|---|
| Page 1 of 1 | Customer Original | INVOICE TOTAL | $183,237.24 |

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1. **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2. **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3. **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4. **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5. **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6. **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7. **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8. **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9. **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10. **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11. **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12. **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

 Caremoli USA, Inc.

8603 Derrington Rd
Houston, TX 77064

# Purchase Order

| Date | P.O. No. |
|---|---|
| 10/15/2015 | 6077H |

| Phone # | (515)-233-1255 |
|---|---|
| Fax # | (515)-233-2933 |

| Vendor |
|---|
| Shrieve Chemical Products<br>PO BOX 671667<br>Dallas, TX 75267-1667 |

| Ship To |
|---|
| Caremoil USA, Inc<br>8603 Derrington Road<br>Houston, TX 77064 |

| Terms | Requested Delivery Date |
|---|---|
| | 10/15/2015 |

| Item | Description | Qty | Rate | U/M | Amount |
|---|---|---|---|---|---|
| H_GSP_002_D | Guar Split Rajasthan 90%.<br><br>Payment schedule as follows:<br>100 MT/month starting Jan 2016 | 700 | 1,832.37241 | MT | 1,282,666.00 |

| Total | $1,282,666.00 |
|---|---|

Invoice

# Shrieve Chemical Products Inc



PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 11/18/2015 |
|---|---|
| **SOLD TO** | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
| **SHIPPED TO** | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |

| INVOICE DATE | 11/18/2015 |
|---|---|
| **INVOICE NUMBER** | 4100028 |
| **OUR ORDER NO.** | 144318 |
| **YOUR ORDER NO.** | 6077H |
| **F.O.B.** | Houston, TX |
| **SHIPPED VIA** | Customer Pickup |
| **FREIGHT** | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split   P/U: 144318   Cust.#: 1<br>Ship Date   11/18/2015 | 100.0000 Metric Tons @ 1,832.3724 per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items – Available upon request*

| | | | |
|---|---|---|---|
| *Page 1 of 1* | Customer Original | **INVOICE TOTAL** | **$183,237.24** |

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS (Invoices)

1.      **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.      **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.      **SECURITY INTEREST/SET-OFF**: Buyer grants to Seller a security interest in the Product and the receivables associated with the sale of the Product to secure payment of the purchase price of the Product. Seller reserves the right to set-off against any amount that Seller(or any affiliates)owe to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among the parties.

4.      **PERFORMANCE ASSURANCE**: In the event that Seller determines that the crediworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

5.      **INSPECTIONS/MEASUREMENTS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto. Seller's weights and measurements, absent manifest error, shall be accepted as conclusive evidence of the quantity of Product delivered.

6.      **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

7.      **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties or foreclose on its security interest; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

8.      **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

9.      **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

10.      **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.1

11.      **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.      **CONFIDENTIALITY**: Except as may be agreed in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 12/01/2015 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 12/01/2015 |
|---|---|
| INVOICE NUMBER | 4100029 |
| OUR ORDER NO. | 144318 |
| YOUR ORDER NO. | 6077H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 144318  Cust.#: 2<br>Ship Date    12/01/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| *Page 1 of 1* | Customer Original | INVOICE TOTAL | $183,237.24 |
|---|---|---|---|

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS (Invoices)

1.     **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.     **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.     **SECURITY INTEREST/SET-OFF**: Buyer grants to Seller a security interest in the Product and the receivables associated with the sale of the Product to secure payment of the purchase price of the Product. Seller reserves the right to set-off against any amount that Seller(or any affiliates)owe to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among the parties.

4.     **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

5.     **INSPECTIONS/MEASUREMENTS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto. Seller's weights and measurements, absent manifest error, shall be accepted as conclusive evidence of the quantity of Product delivered.

6.     **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes by Seller or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

7.     **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties or foreclose on its security interest; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

8.     **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

9.     **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

10.     **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.1

11.     **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.     **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.



**Shrieve**

Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 12/01/2015 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 12/01/2015 |
|---|---|
| INVOICE NUMBER | 4100030 |
| OUR ORDER NO. | 144318 |
| YOUR ORDER NO. | 6077H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 144318  Cust.#: 3<br>Ship Date    12/01/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

Page 1 of 1                     Customer Original                     **INVOICE TOTAL**    **$183,237.24**

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS (Invoices)

1.    **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.    **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.    **SECURITY INTEREST/SET-OFF**: Buyer grants to Seller a security interest in the Product and the receivables associated with the sale of the Product to secure payment of the purchase price of the Product. Seller reserves the right to set-off against any amount that Seller(or any affiliates)owe to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among the parties.

4.    **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

5.    **INSPECTIONS/MEASUREMENTS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto. Seller's weights and measurements, absent manifest error, shall be accepted as conclusive evidence of the quantity of Product delivered.

6.    **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

7.    **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties or foreclose on its security interest; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

8.    **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

9.    **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

10.    **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.1

11.    **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.    **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 12/01/2015 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 12/01/2015 |
|---|---|
| INVOICE NUMBER | 4100031 |
| OUR ORDER NO. | 144318 |
| YOUR ORDER NO. | 6077H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 144318  Cust.#: 4<br>Ship Date    12/01/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| Page 1 of 1 | Customer Original | INVOICE TOTAL | $183,237.24 |
|---|---|---|---|

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS (Invoices)

1.       **APPLICATION**:  These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.       **TERMS OF PAYMENT**:  Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due.  Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of  (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.       **SECURITY INTEREST/SET-OFF**:  Buyer grants to Seller a security interest in the Product and the receivables associated with the sale of the Product to secure payment of the purchase price of the Product.  Seller reserves the right to set-off against any amount that Seller(or any affiliates)owe to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among the parties.

4.       **PERFORMANCE ASSURANCE**:  In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

5.       **INSPECTIONS/MEASUREMENTS**:  Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery.  Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.  Seller's weights and measurements, absent manifest error, shall be accepted as conclusive evidence of the quantity of Product delivered.

6.       **WARRANTY/LIMITATION**:  As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance.  EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

7.       **DEFAULT/REMEDIES**:  Upon the occurrence of any of the following events (a "Default"):  (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement  between or among any such parties or foreclose on its security interest; and/or (iv) initiate legal action to recover amounts due and owing.  If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer.  Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

8.       **FORCE MAJEURE**:  Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event.  As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller.  Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event.  For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days.  Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

9.       **INDEMNITY**:  To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees.  Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

10.      **GOVERNING LAW**:  The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.1

11.      **AMENDMENT; SEVERABILITY**:  Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing.  In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.      **CONFIDENTIALITY**:  Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 12/01/2015 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 12/01/2015 |
|---|---|
| INVOICE NUMBER | 4100032 |
| OUR ORDER NO. | 144318 |
| YOUR ORDER NO. | 6077H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split   P/U: 144318   Cust.#: 5<br>Ship Date   12/01/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| Page 1 of 1 | Customer Original | INVOICE TOTAL | $183,237.24 |
|---|---|---|---|

**PLEASE REMIT TO**   Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667

## GENERAL TERMS AND CONDITIONS (Invoices)

1.     **APPLICATION:** These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.     **TERMS OF PAYMENT:** Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.     **SECURITY INTEREST/SET-OFF:** Buyer grants to Seller a security interest in the Product and the receivables associated with the sale of the Product to secure payment of the purchase price of the Product. Seller reserves the right to set-off against any amount that Seller(or any affiliates)owe to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among the parties.

4.     **PERFORMANCE ASSURANCE:** In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

5.     **INSPECTIONS/MEASUREMENTS:** Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto. Seller's weights and measurements, absent manifest error, shall be accepted as conclusive evidence of the quantity of Product delivered.

6.     **WARRANTY/LIMITATION:** As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

7.     **DEFAULT/REMEDIES:** Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement  between or among any such parties or foreclose on its security interest; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

8.     **FORCE MAJEURE:** Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

9.     **INDEMNITY:** To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

10.     **GOVERNING LAW:** The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.1

11.     **AMENDMENT; SEVERABILITY:** Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.     **CONFIDENTIALITY:** Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 12/01/2015 |
|---|---|
| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |

| INVOICE DATE | 12/01/2015 |
|---|---|
| INVOICE NUMBER | 4100033 |
| OUR ORDER NO. | 144318 |
| YOUR ORDER NO. | 6077H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split      P/U: 144318  Cust.#: 6<br>Ship Date    12/01/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| | | | |
|---|---|---|---|
| Page 1 of 1 | Customer Original | INVOICE TOTAL | $183,237.24 |

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS (Invoices)

1. **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2. **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3. **SECURITY INTEREST/SET-OFF**: Buyer grants to Seller a security interest in the Product and the receivables associated with the sale of the Product to secure payment of the purchase price of the Product. Seller reserves the right to set-off against any amount that Seller(or any affiliates)owe to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among the parties.

4. **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

5. **INSPECTIONS/MEASUREMENTS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto. Seller's weights and measurements, absent manifest error, shall be accepted as conclusive evidence of the quantity of Product delivered.

6. **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

7. **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties or foreclose on its security interest; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

8. **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

9. **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

10. **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.1

11. **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12. **CONFIDENTIALITY**: Except as may be agreed in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

Invoice



# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 12/01/2015 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 12/01/2015 |
|---|---|
| INVOICE NUMBER | 4100034 |
| OUR ORDER NO. | 144318 |
| YOUR ORDER NO. | 6077H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 144318   Cust.#: 7<br>Ship Date   12/01/2015 | 100.0000  Metric Tons @ 1,832.3724  per MTON | | $183,237.24 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| Page 1 of 1 | Customer Original | INVOICE TOTAL | $183,237.24 |
|---|---|---|---|

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS (Invoices)

1.     **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.     **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.     **SECURITY INTEREST/SET-OFF**: Buyer grants to Seller a security interest in the Product and the receivables associated with the sale of the Product to secure payment of the purchase price of the Product. Seller reserves the right to set-off against any amount that Seller(or any affiliates)owe to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among the parties.

4.     **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

5.     **INSPECTIONS/MEASUREMENTS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto. Seller's weights and measurements, absent manifest error, shall be accepted as conclusive evidence of the quantity of Product delivered.

6.     **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

7.     **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement  between or among any such parties or foreclose on its security interest; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

8.     **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

9.     **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

10.    **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.1

11.    **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.    **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

 Caremoli USA, Inc.

# Purchase Order

8603 Derrington Rd
Houston, TX 77064

| Date | P.O. No. |
|------|----------|
| 2/14/2016 | 5900H |

| Phone # | (515)-233-1255 |
|---------|----------------|
| Fax # | (515)-233-2933 |

| Vendor |
|--------|
| Shrieve Chemical Products<br>PO BOX 671667<br>Dallas, TX 75267-1667 |

| Ship To |
|---------|
| Caremoil USA, Inc<br>8603 Derrington Road<br>Houston, TX 77064 |

| | Terms | Requested Delivery Date |
|---|-------|------------------------|
| | | 2/15/2016 |

| Item | Description | Qty | Rate | U/M | Amount |
|------|-------------|-----|------|-----|--------|
| H_GSP_004_D | grade A Haryana Splits-1000kg totes | 400 | 1,500.00 | MT | 600,001.38 |

5 80MT Releases with Payments Due: 3/15, 4/15, 5/15, 6/15 & 7/15

**Total** $600,001.38



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100047 |
| OUR ORDER NO. | 145148 |
| YOUR ORDER NO. | 5900H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split     P/U: 145148<br>Ship Date    02/15/2016 | 80.0000  Metric Tons @ 1,500.0000  per MTON | | $120,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| | | | |
|---|---|---|---|
| *Page 1 of 1* | Customer Original | **INVOICE TOTAL** | **$120,000.00** |

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1. **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2. **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3. **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend delivery of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4. **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5. **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6. **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof,( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7. **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8. **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9. **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10. **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11. **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12. **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.


**Shrieve**

Invoice

# Shrieve Chemical Products Inc
PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100048 |
| OUR ORDER NO. | 145148 |
| YOUR ORDER NO. | 5900H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split     P/U: 145148<br>                    Ship Date    02/15/2016 | 80.0000  Metric Tons @ 1,500.0000  per MTON | | $120,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| Page 1 of 1 | Customer Original | **INVOICE TOTAL** | **$120,000.00** |
|---|---|---|---|

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS

1.    **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.    **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.    **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4.    **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5.    **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6.    **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in this discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement  between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing.  If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7.    **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" used shall mean any cause or event not reasonably within the control of the Seller.  Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event.  For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days.  Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8.    **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees.  Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9.    **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.).  Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10.    **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11.    **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing.  In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.    **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

Invoice



# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100049 |
| OUR ORDER NO. | 145148 |
| YOUR ORDER NO. | 5900H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 145148<br>Ship Date   02/15/2016 | 80.0000  Metric Tons @ 1,500.0000  per MTON | | $120,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| Page 1 of 1 | Customer Original | INVOICE TOTAL | $120,000.00 |
|---|---|---|---|

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1.     **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.     **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.     **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) request deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4.     **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5.     **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6.     **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7.     **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8.     **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9.     **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10.     **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11.     **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.     **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

Invoice

# Shrieve Chemical Products Inc



**Shrieve**

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100050 |
| OUR ORDER NO. | 145148 |
| YOUR ORDER NO. | 5900H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 145148<br>Ship Date    02/15/2016 | 80.0000  Metric Tons @ 1,500.0000  per MTON | | $120,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

*Page 1 of 1* | Customer Original | **INVOICE TOTAL** | **$120,000.00**

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

## GENERAL TERMS AND CONDITIONS

1.　　**APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.　　**TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.　　**PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4.　　**INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5.　　**WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6.　　**DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7.　　**FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8.　　**INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9.　　**COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10.　　**GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11.　　**AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.　　**CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100051 |
| OUR ORDER NO. | 145148 |
| YOUR ORDER NO. | 5900H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 145148<br>Ship Date    02/15/2016 | 80.0000  Metric Tons @ 1,500.0000  per MTON | | $120,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| *Page 1 of 1* | Customer Original | **INVOICE TOTAL** | **$120,000.00** |
|---|---|---|---|

| **PLEASE REMIT TO** | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1. **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2. **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3. **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4. **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5. **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6. **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7. **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8. **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9. **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10. **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11. **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12. **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

 Caremoli USA, Inc.

8603 Derrington Rd
Houston, TX 77064

# Purchase Order

| Date | P.O. No. |
|---|---|
| 2/15/2016 | 5901H |

| Phone # | (515)-233-1255 |
|---|---|
| Fax # | (515)-233-2933 |

| Vendor |
|---|
| Shrieve Chemical Products<br>PO BOX 671667<br>Dallas, TX 75267-1667 |

| Ship To |
|---|
| Caremoil USA, Inc<br>8603 Derrington Road<br>Houston, TX 77064 |

| Terms | Requested Delivery Date |
|---|---|
|  | 2/15/2016 |

| Item | Description | Qty | Rate | U/M | Amount |
|---|---|---|---|---|---|
| H_GSP_004_D | grade A Haryana Splits-1000kg totes | 120 | 1,500.00 | MT | 180,000.41 |

2 60MT Releases with Payments Due: 8/15, 9/15

## Total

$180,000.41



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

**Shrieve**

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100052 |
| OUR ORDER NO. | 145149 |
| YOUR ORDER NO. | 5901H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 145149<br>                    Ship Date    02/15/2016 | 60.0000  Metric Tons @ 1,500.0000  per MTON | | $90,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

Page 1 of 1

Customer Original

INVOICE TOTAL      $90,000.00

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1.       **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2.       **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3.       **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4.       **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5.       **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6.       **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7.       **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8.       **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9.       **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10.      **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11.      **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12.      **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.


**Shrieve**

Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100053 |
| OUR ORDER NO. | 145149 |
| YOUR ORDER NO. | 5901H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 30 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 145149<br>Ship Date   02/15/2016 | 60.0000  Metric Tons @ 1,500.0000  per MTON | | $90,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

*Page 1 of 1*

Customer Original

**INVOICE TOTAL**    **$90,000.00**

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1. **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2. **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3. **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4. **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5. **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, DO NOT MAKE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANTIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6. **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof;( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7. **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8. **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9. **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10. **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11. **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12. **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.

 Caremoli USA, Inc.

# Purchase Order

8603 Derrington Rd
Houston, TX 77064

| Date | P.O. No. |
|------|----------|
| 2/16/2016 | 5905H |

| Phone # | (515)-233-1255 |
|---------|----------------|
| Fax # | (515)-233-2933 |

| Vendor |
|--------|
| Shrieve Chemical Products<br>PO BOX 671667<br>Dallas, TX 75267-1667 |

| Ship To |
|---------|
| Caremoil USA, Inc<br>8603 Derrington Road<br>Houston, TX 77064 |

| Terms | Requested Delivery Date |
|-------|-------------------------|
|       | 2/15/2016 |

| Item | Description | Qty | Rate | U/M | Amount |
|------|-------------|-----|------|-----|--------|
| H_GSP_004_D | grade A Haryana Splits-1000kg totes | 66 | 1,500.00 | MT | 99,000.23 |

1 66MT Release with Payment Due: 10/15

| **Total** | $99,000.23 |
|-----------|------------|



Invoice

# Shrieve Chemical Products Inc

PO Box 671667
Dallas, TX 75267 1667
ABA#111000753 Acct#1881217291
P: (281) 367-4226  F: (281) 367-0071

| DATE SHIPPED | 02/15/2016 |
|---|---|

| SOLD TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| SHIPPED TO | Caremoli USA, Inc.<br>8603 Derrington Rd<br>Houston, TX 77064-<br>United States |
|---|---|

| INVOICE DATE | 02/15/2016 |
|---|---|
| INVOICE NUMBER | 4100046 |
| OUR ORDER NO. | 145144 |
| YOUR ORDER NO. | 5905H |
| F.O.B. | Houston, TX |
| SHIPPED VIA | Customer Pickup |
| FREIGHT | Collect |

TERMS  Net 120 days

| DESCRIPTION | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|
| 90-92/93%/Grade A/B Split    P/U: 145144<br>Ship Date    02/15/2016 | 66.0000  Metric Tons @ 1,500.0000  per MTON | | $99,000.00 |

*Thank you for your business!*
*SDS for ALL items - Available upon request*

| | | | |
|---|---|---|---|
| *Page 1 of 1* | Customer Original | **INVOICE TOTAL** | **$99,000.00** |

| PLEASE REMIT TO | Shrieve Chemical Products Inc ABA#111000753 Acct#1881217291 PO Box 671667 Dallas, TX 75267 1667 |
|---|---|

# GENERAL TERMS AND CONDITIONS

1. **APPLICATION**: These General Terms and Conditions ("Terms and Conditions") will apply to all sales of product ("Product") by Shrieve Chemical Company or Shrieve Chemical Products, Inc. and are incorporated into a Sales Agreement, if any, or purchase order (the General Terms and Conditions, singly or in combination with the Sales Agreement or purchase order, referred to herein as the, "Agreement"). In the event of a conflict between the Terms and Conditions and the specific provisions of the Sales Agreement, the specific provisions of the Sales Agreement shall control.

2. **TERMS OF PAYMENT**: Buyer agrees to timely make payment for the full amount of Seller's invoice in U.S. Dollars, without discount, adjustment, or setoff, within thirty (30) days (or such other number of days as may be agreed in writing) from the date of invoice and if not paid on or before said date will be deemed past due. Interest shall be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the lesser of (i) 5% per annum and (ii) the maximum rate permitted by law, from the payment due date until paid in full.

3. **PERFORMANCE ASSURANCE**: In the event that Seller determines that the creditworthiness or future performance of the Buyer is impaired or unsatisfactory, Seller may (i) suspend deliveries of Product, (ii) require prepayment by wire transfer at least two business days prior to a scheduled shipment of Product, and/or (iii) require collateral in the form of either cash, letter(s) of credit, guaranty, or other security acceptable to Seller at least three business days prior to a scheduled shipment of Product.

4. **INSPECTIONS**: Buyer shall, at its own cost and expense, inspect the Product furnished hereunder immediately after delivery. Buyer's failure to give written notice to Seller of any claim for non-conforming Product within three days from the date of delivery shall constitute acceptance of the Product and a waiver of claims with respect thereto.

5. **WARRANTY/LIMITATION**: As its sole warranty, Seller warrants to Buyer that, at the earlier of the time title to the Product passes to Buyer or risk of loss to the Product passes to Buyer: (i) the Product shall conform to the specifications set forth in the Agreement and (ii) title to the Product shall be free from any security interest, lien or encumbrance. EXCEPT AS SPECIFICALLY SET FORTH IN THE PRECEDING SENTENCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AFFILIATES HAVE NOT MADE, AND EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, AS TO THE MERCHANITIBILITY, QUANTITY, CONDITION, OR QUALITY OF THE PRODUCT OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AND THE PRODUCT IS SOLD "AS IS." WITHOUT LIMITATION ON THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL SELLER OR ANY OF ITS AFFILIATES BE LIABLE OR HAVE ANY RESPONSIBILITY TO BUYER OR ANY OTHER THIRD PARTY FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST EARNINGS, LOST PROFITS, OR BUSINESS INTERRUPTION. Seller's total liability and expense for any claim related indirectly or directly to the Product or this Agreement shall not exceed the purchase price of the portion of the Product in respect to which such claim is made.

6. **DEFAULT/REMEDIES**: Upon the occurrence of any of the following events (a "Default"): (i) Seller shall not have received a payment due from Buyer by the date such payment is due, and such failure shall remain for a period of two days; (ii) the failure by Buyer to provide Performance Assurance when due; (iii) the failure of Buyer to perform any other obligation in the Agreement and such failure is not excused or cured within three business days after written notice thereof,( iv) the filing of a petition or otherwise commencing, authorizing or acquiescing in the commencement of a proceeding or cause of action under bankruptcy, insolvency, reorganization or similar law or otherwise becoming bankrupt or insolvent (however evidenced) or being generally unable to pay its debts as they become due; (vi) dissolution or merger of the Buyer and transfer of a substantial part of the Buyer's assets, THEN Seller may, in its discretion and without notice to Buyer, do any one or more of the following: (i) suspend performance under the Agreement; (ii) terminate the Agreement, whereby any and all obligations of Buyer, including payment and deliveries shall, at the option of the Seller, become immediately due and payable or deliverable, as applicable; (iii) set-off against any amount that Seller (or any of its affiliates) owes to Buyer (or any of its affiliates) under the Agreement or any other agreement between or among any such parties; and/or (iv) initiate legal action to recover amounts due and owing. If Seller suspends performance and withholds delivery of Product as permitted above, it may sell the Product to a third party and add all reasonable costs resulting from Buyer's default, including without limitation, all costs associated with the transaction (including demurrage and other vessel or shipping related charges), storage, and sale of Product to the amount owed by Buyer. Termination for any reason whatsoever will not relieve Buyer of its obligation to pay any unpaid balance due Seller under this Agreement, but shall relieve Seller of any obligation to make additional deliveries.

7. **FORCE MAJEURE**: Seller shall not be liable to Buyer for failure to perform under the Agreement to the extent such failure was caused by a Force Majeure Event. As used herein, "Force Majeure Event" shall mean any cause or event not reasonably within the control of the Seller. Upon providing notice of a Force Majeure Event to Buyer, Seller shall be relieved of its obligation, from the onset of the Force Majeure Event, to make delivery of Product to the extent and for the duration of the Force Majeure Event, and shall not be deemed to have failed in such obligations to Buyer during such occurrence or event. For the duration of the Force Majeure Event, the Seller may allocate available supply of Product among customers or terminate the Agreement if the Force Majeure Event lasts more than sixty days. Under no circumstances shall Seller be obligated to cure deficiencies in deliveries of Product caused by a Force Majeure Event.

8. **INDEMNITY**: To the fullest extent permitted by law, Buyer shall defend, protect, indemnify, and save Seller, its affiliates and their respective officers, directors, and employees (collectively, "Indemnitees") harmless from and against all claims, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, without limitation, attorney's fees and expenses) and costs of every kind and character due for any reason whatsoever, including personal injuries, death, damage to property, damage to the environment, regardless of whether such harm is to Buyer, Indemnitees, the employees or officers of either or any other person (collectively, "Liabilities/Claims"), arising out of or in any way incident to (i) possession, use, transportation, unloading, storage or handling of Product at or after the time title to the Product passes to Buyer; (ii) Buyer's, or Buyer's agents, subcontractors or subsequent purchasers, or any of their employees, use, misuse, or disposal of the Product (including, without limitation, liability for environmental pollution); (iii) use or misuse of rail cars or motor vehicles, except in each case under subsection (i) through (iii) above that Buyer shall not be liable for loss or damage resulting from the sole negligence of the Indemnitees. Buyer's duty of indemnification shall survive the termination of this Agreement or the cessation of business transactions between Buyer and Seller.

9. **COMPLIANCE**: Buyer shall comply fully with all applicable U.S. and non-U.S. laws and regulations in its performance of the Agreement and shall neither take nor refrain from taking any action that could result in liability for either Buyer or Seller under applicable law, including without limitation, the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention or any other applicable anti-bribery law or treaty, or those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control (31 CFR Chapter V) or the U.S. Commerce Department's Bureau of Industry and Security (15 CFR Parts 730 et seq.). Buyer's breach of the preceding sentence shall constitute cause for immediate termination of the Agreement and Buyer shall be liable for payment of all costs, fines or penalties assessed on Buyer and/or Seller.

10. **GOVERNING LAW**: The Agreement and its execution, performance, interpretation, construction and enforcement shall be governed by the laws of the State of Texas, without regard to its conflicts of law rules.

11. **AMENDMENT; SEVERABILITY**: Neither party shall claim amendment, modification, or release of any provisions hereof unless the same is in writing. In the event any term or provision of this Agreement shall be found by a court of competent jurisdiction to be unenforceable, such term or provision shall be null and void but shall not affect the validity or enforceability of any other term or provision of the Agreement.

12. **CONFIDENTIALITY**: Except as may be agreed to in writing by the affected party, or as may be necessary to perform obligations herein, Buyer and Seller shall maintain in confidence all information disclosed in connection with the Agreement.